# Moore et al. v. Malis.

### Nov. 17, 1942.

Shumate & Shumate and Beverly White for appellants.

H. E. Hay for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

In May, 1939, Sam Malis purchased an interest in

a partnership formed by Roger O. Moore and F. S. Laubert, which was carrying on a business of acidizing oil and gas wells around Owensboro. On May 8th, Moore and Laubert gave Malis a receipt for $2,500 which he had paid into the firm. The receipt contained the following provision:

"* * * It is further understood that said S. Malis is to advance the same amount of money that the said F. S. Laubert has advanced, this amount to be determined, and that each party above mentioned shall own one third interest, that is S. Malis one third interest, F. S. Laubert, one third interest, and Roger O. Moore, one third interest in the above mentioned firm. It being understood that the $2500.00 herein above mentioned shall apply on the amount to be advanced by S. Malis."

On May 20th, there was prepared a statement entitled "Audit of Accounts of R. O. Moore & F. S. Laubert." This statement listed the equipment and other properties and assets of the partnership, as well as certain items under the heading of "Expense." The statement listed various items of property with a value something in excess of $4,000. Under the heading of "Accounts Payable" there were listed items totaling a little more than $2,200. "Accounts Receivable" and "Cash in Bank" totaled a little more than $1,600. This would indicate that on May 20th the partnership's assets exceeded its liabilities by approximately $3,400. Under the heading "Individuals of Firm (Account)" the following entries appeared:

"5-20-39  Credit,  R. O. Moore, (Monies advanced to firm $   554.92
          "        Sam Malis (Monies advanced to firm.. 2,500.00
          "        F. S. Laubert, (Monies advanced to firm 3,539.31"

There appeared also this notation:

"Sam Malis; and is to be a partnership with each of the above named members sharing equal interest in the business."

This audit was approved and accepted by all three of the partners. When the receipt given Malis for his $2,-500 on May 8th and the audit are considered, it can be seen that Malis still owed $1,039.31 on his share. Moore conducted and operated the business, and it was because of his peculiar knowledge of the business of acidizing oil

and gas wells that his monetary contribution to the enterprise was so small.

There is testimony for Moore that business was dull around Owensboro and that the partnership did not make any money. He made no accounting to Malis, however, and Malis never received anything from the enterprise. Malis offered proof in support of his contention that he had advanced $700 additional, but Moore said that this money was used for other ventures engaged in by him and Malis. Moore purchased Laubert's interest in the partnership. Without the knowledge or consent of Malis, he moved all the equipment to Powell County sometime in August, 1939. There, he, with others, engaged in carrying on a bottled gas business for a while. Later he did some work in acidizing wells in addition to the development of certain leases in that part of the state. Early in 1940, Moore formed the Moore Chemical Company of which he held more than 90 per cent of the stock. He transferred what remained of the old partnership equipment to the new company. Malis instituted this action against Moore and the company and two other parties who were working with Moore to get back his $3,200 and for an accounting of all the transactions engaged in by Moore wherein his money was used. The action seems to have been treated as one to settle the partnership. An attachment was issued on the equipment held by the company and on some personal property owned by Moore. A forthcoming bond was executed by Moore and the property was released.

The company made the plea that it was the owner of the property and that it had purchased it in good faith. It set forth also that it should not be charged with knowledge of the transactions between Moore and Malis. Moore advanced the contentions that the partnership venture had been a failure; that he had made little, if any, money since he left Owensboro; that the property was worth only about $3,200 when he moved to Powell County; that he offered to turn it over to Malis if he would meet all of the partnership debts but that Malis refused to do so; that he had been called upon to pay some $3,500 of partnership debts; that Laubert had paid $4,500 into the partnership, thereby leaving Malis owing $2,000; and that the property had been transferred to the corporation in good faith. He offered some proof in

addition to his own in support of his contentions. Obviously, Malis was in no position to know much of Moore's activities. He did say, however, that he had put an additional $700 into the enterprise; that Moore had never made any accounting to him; that on frequent occasions they had arranged to meet in Louisville to discuss their affairs; and that Moore had said he would straighten things out with him.

We have noted that Moore operated around Owensboro for not more than six to eight weeks after May 20th; and that the partnership had assets totaling some $3,400 in excess of its obligations when Malis bought an interest in it. When Moore went to Powell County he automatically terminated the partnership, for he took all of the equipment with him and appropriated it to his own use. Lockridge v. Fulkerson, 267 Ky. 70, 100 S. W. (2d) 815. Since he had charge of all the property and accounts and conducted all of the partnership business, the burden was on him to show conclusively the credits and allowances claimed. The confused state of accounts rested with him, and, obviously, all questions of doubt in arriving at a solution of the partnership affairs should be resolved against him. Ordinarily, partners are required to bear their equal part of the partnership enterprise. Guthrie v. Foster, 256 Ky. 753, 76 S. W. (2d) 927; Gowin v. Lake, 243 Ky. 442, 48 S. W. (2d) 1059. But here we are confronted with no ordinary partnership arrangement. Scarcely had Malis bought into the enterprise when one of the partners pulled up stakes and moved all of the partnership property into another part of the state and began transacting business for himself.

Under the circumstances, we think the chancellor was justified in going back to the audit report of May 20th in his attempt to settle the partnership's affairs. This report contained the most tangible and definite evidence in the record as to how the parties stood, and, as we have noted, the statement was accepted and approved by all three of the partners. The judgment in favor of Malis was in the amount of $1,406.69. This sum was arrived at by deducting the amount originally contributed by Malis ($2,500) from the $3,539.31—this left Malis owing $1,039.31. This amount was deducted from the amount originally contributed by Malis, leaving $1,406.69 due him. We believe the record justifies this conclusion, regardless of whether our interpretation of the assets and

liabilities of the partnership as set forth in the audit of May 20th is correct.

We have noted that it is contended that Laubert put more than $4,500 into the venture. From our examination of the cancelled Laubert checks filed as exhibits by Moore, we find that he contributed only the sum of $270 after May 20th, aside from a $100 check made out to cash. We have noted also that Malis said that he put in $700 in addition to the original $2,500. Had the chancellor dissolved the partnership on the basis of these figures, which the record would have warranted, Malis would have been entitled to some $2,600 instead of $1,400. But there is no cross-appeal, so we will concern ourselves no further with this point.

While the judgment is only against Moore, it directs that the property transferred to the company be sold to satisfy it. We deem this proper. There is no basis whatever for the contention that the corporation had no knowledge of Malis' claim. For all practical purposes Moore and the corporation were one and the same, so we deem it unnecessary to enter upon a discussion of whether Moore's knowledge of the claims of Malis was imputed to the corporation.

It follows from what has been said that it is our view that the judgment should be and it is affirmed.